IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| KI-1, Inc. Et. Al., f/k/a/KELLSTROM | : | Case No. 02-10536 (WS) |
| INDUSTRIES, INC., et. al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | | Related Docket Nos. 1279, 1288, 1316, 1319, 1333, 1336, 1337, 1338 |

## OPINION

This contested matter arises out of an order (Docket No. 1288, "the Order and Stipulation") granted by the Court on February 24, 2005, in resolution of a Motion of Castle Precision Industries, Inc., ("Castle" relief from Stay).

For the reasons stated below, and pursuant to the Court's power under 105 (a) of the Code, the Court will deny the Motion of Castle for relief from the automatic stay, but without prejudice to it's, Castle is not renewing its request. However, the Court will decline to incorporate into any such order the terms of the Stipulation between and among Castle, the KI-1 Liquidating Trust, and the Class 1 Liquidating Trust, now disavowed by the Liquidating Trustee.

## I. PRE-PETITION FACTUAL BACKGROUND

On or about December 5, 1998, Kellstrom Industries, Inc. ("Kellstrom") entered into an agreement (the "Stock Purchase Agreement" or "the Agreement") with Banner to purchase 100% of the stock of Solair, a Florida Corporation and a wholly owned subsidiary of Banner. Pursuant to 6.15 of the Stock Purchase Agreement, Banner assumed the right to prosecute (and to retain any

---

[1] The Debtors including Kellstrom Industries, Inc. and Solair, Inc.(f/k/a/ Solair Enterprises, Inc., and also Kellstrom Solair, Inc.).

1

benefits obtained thereby) and the responsibility to defend any and all litigation to which Solair was a party. Further, pursuant to 9 of the Agreement, Banner agreed to indemnify and hold harmless Kellstrom from certain expenses, liabilities, and damages, including claims of third parties relating to Solair or its business and arising from or related to events occurring on or prior to the Closing Date for consummation of the stock purchase ("the Indemnity Right").

In January 1995, prior to the date of the Agreement, Solair (then known as Solair Enterprises, Inc.) had filed an action against Castle in the Circuit Court of Dade County, Florida ("the Florida Action") styled <u>Solair Enters., Inc. v. T.M.W. Corp. d/b/a Castle Precision Indus., Inc.</u>, Case No. 95-2047 CA 21. Solair alleged breach of lease and other claims against Castle, and Castle filed a counterclaim on similar theories.

## II. UPON AND POST-PETITION FACTUAL BACKGROUND

On February 20, 2002, (the "Petition Date") Kellstrom and its subsidiaries and affiliates, including Solair (collectively the "Debtors") filed voluntary petitions for relief ("the petitions") under Chapter 11 of Title 11 of the United State Code (the "Bankruptcy Code"). The Debtors' Chapter 11 cases are being jointly administered.

At the time of filing of the petitions, unrelated to the Florida Action, Castle was a trade creditor of Solair. On September 14, 2002, this Court entered an order establishing November 10, 2002, as the deadline (the "Bar Date") on or before which proof of all pre-petition claims against the Debtors had to be filed. Castle alleges that the Florida Action was not listed by Debtors in their Statement of Financial Affairs or otherwise referenced in their Schedule of Assets and Liabilities, nor was the Indemnity Right against Banner claimed as an asset of the Debtors' estates. The Liquidating Trustee does not dispute these facts.

Castle received notice of the Bar Date and of the subsequent confirmation hearing and was sent a ballot with respect to the Plan. Castle did not file a proof of claim prior to the Bar Date. Castle has not alleged having a pre-petition secured or priority claim against the Debtors. On August 5, 2003, this Court entered an Order confirming the Debtor's Third Modified First Amended Joint Chapter 11 Plan (Docket No. 890, "the Confirmation Order"). Castle alleges and the Liquidating Trustee does not dispute that the Florida Action was not referenced in the Disclosure Statement or the Plan, nor was there any classification under the Plan of the Debtors' unimpaired Indemnity Right against Banner. Pursuant to the Plan, the KI-1 Liquidating Trustee was appointed Trustee of the general unsecured creditors' trust ("the KI-1 Liquidating Trust"). Bank of America, N.A. is the Agent for the Debtors' Senior Secured Lenders, for whose benefit the collateral securing such lenders was transferred to the "Class 1 Liquidating Trust."

Notwithstanding the intervening Bankruptcy filing, and in the absence of filing of any Suggestion in Bankruptcy in the court in which the Florida Action was pending, on November 3, 2003, the claim and counterclaims of Solair and Castle went to trial in that jurisdiction. The Liquidating Trustee does not dispute that Solair was not On November 14, 2003, a jury made an award in favor of Castle. Solair moved to set aside the jury's verdict and responded to Castle's post-trial motion for attorney's fees. The parties' motions were briefed and argued, and on July 16, 2004, a Final Judgment Order was entered in the Florida Action, reducing the jury's award of damages to Castle and awarding prejudgment interest. On August 9, 2004, Castle filed its Notice of Appeal to reinstate the more favorable jury verdict. On August 10, 2004, Solair filed a cross-notice of appeal. Castle's motion for attorney's fees was scheduled to be heard on September 16,

2004. On September 15, 2004, Solair filed a Suggestion in Bankruptcy in respect of the Debtors' February 20, 2002, Chapter 11 Petition.

## III.   PROCEDURAL BACKGROUND

On December 10, 2004, in its capacity as judgment creditor of Solair, Castle filed a Motion (Docket No. 1279, "Motion of Castle"), for relief from the automatic stay imposed by 362 of Bankruptcy Code. Castle's Motion was resolved by a stipulation ("the Stipulation") entered into between and among Castle, the KI-1 Liquidating Trust, and the Class 1 Liquidating Trust, which Stipulation was incorporated into an Order and Stipulation granted by the Court on February 24, 2005, (Docket No. 1288, "Order and Stipulation").

Banner had no prior notice of Castle's Motion, nor of the Stipulation agreed to resolve the Motion, nor of the Court's having entered the Order and Stipulation until after the expiration of the period during which an appeal might have been taken. On March 21, 2005, Banner filed a Motion for reconsideration and relief (Docket No. 1316). On April 13, 2005, Castle filed an Objection (Docket No. 1319, "Castle Objection") to the reconsideration motion.

Over the objection of Castle, in recognition of Banner's due process right to be heard, and being concerned that entry of the Order and Stipulation without notice to Banner may have been a mistake of law or have worked a manifest injustice, on May 9, 2005, by further order (Docket No. 1330), this Court granted the reconsideration motion of Banner, the Order and Stipulation was vacated, and a hearing was scheduled for June 23, 2005 ("the Hearing").

Prior to the scheduled Hearing, Banner (Docket No. 1333, "Objection of Banner") and Castle (Docket No. 1336, "Castle Response") briefed the issues for the Court, a statement was filed by the Liquidating Trustee (Docket No. 1338, "Statement"), and an objection and statement (Docket No.

4

1325, "Objection") was filed by Bank of America, N.A., Agent for the Debtors' Senior Secured Lenders. At the Hearing, Castle, Banner, the Trustee of the KI-1 Liquidating Trust, and Bank of America were represented by counsel. Having heard from all who wished to address the Court, the Court took the matter under advisement.

## IV.   JURISDICTION

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. 157 (b) & 1334, and 11 U.S.C. 105 & 362.

## V.   SYNOPSIS OF THE ALLEGATIONS AND ARGUMENTS OF THE INTERESTED PARTIES

### Banner Aerospace, Inc.

Banner asserts that its objection to the Order and Stipulation is limited solely to the issue of the legality of the attempted assignment to Castle of the rights of Solair under the Stock Purchase Agreement. (Objection of Banner at 2:1 and 9:14), in particular as the Stipulation

- authorizes the Debtors and the Liquidating Trustee to waive any argument that the Castle Counterclaim in the Florida Action was discharged under the Plan and to waive the argument that Castle is not a third-party beneficiary of the indemnification provisions set forth in the Stock Purchase Agreement; and

- authorizes Castle to assert Debtor Solair's indemnification rights under 6.15 of the Stock Purchase Agreement and assigns such rights to Castle, notwithstanding an express prohibition in the Agreement against assignment without Banner's consent.

Banner alleges that Castles primary motive in attempting to become assignee of Solair's rights to indemnification by Banner is the improper elevation of its pre-petition general unsecured claim. (Motion of Banner at 3:3; Objection of Banner at 2:2).

Banner argues that on February 22, 2002, when substantially all of the Debtors' assets were sold (with court approval on June 13, 2002), the indemnity right between Debtors and Banner was assigned to KIAC, Inc., leaving nothing in Solair to "assign" to Castle. (Motion of Banner at 19:34). Alternatively, Banner argues that the purported assignment contained in the Stipulation is ineffective; that assignment without Banner's prior written consent is expressly prohibited under 11.5 of the Stock Purchase Agreement, and that under Florida law an attempted assignment contravening an express prohibition will not be given effect. (Objection of Banner at 3:3-4)

Banner also disputes the extent and nature of Debtor Solair's rights that could in any event be assigned to Castle. Banner argues that in the intervening bankruptcy, Debtor Solair never assumed the Stock Purchase Agreement, but impliedly rejected it under its Chapter 11 Plan. Therefore, Debtor Solair holds only the rights of a party that materially breached the Stock Purchase Agreement as of the Petition Date. (Objection of Banner at 14:21).

Banner alleges that the Chapter 11 Petition automatically changed the status of Solair to that of a Debtor in Bankruptcy, therefore the treatment of Castle's judgment is now governed and limited by the Bankruptcy Code. (Motion of Banner at 15:26-27; Objection of Banner at 10 11:16-17) Further, Debtor Solair's liability on the Castle counterclaim in the Florida Action (and therefore, its liability as judgment debtor) is no greater that its liability with respect to other general unsecured claims asserted against the estate. (Motion of Banner at 15:27: Objection of Banner at 11:16). The legal conclusion Banner draws is that Debtor Solair cannot be required to satisfy the Castle judgment in anything except the "bankruptcy dollars" it will distribute to other general, unsecured creditors, and that Solair in turn can only seek indemnification or reimbursement from Banner for the same reduced amounts. (Motion of Banner at 15:27; Objection of Banner at 19:26).

6

Banner also objects to the terms of the Stipulation which preclude objections being raised to Castle's third-party status claims and alleges that Castle would not be successful on the merits of such claim pursuant to Florida law. (Objection of Banner at 16:23).

Banner also disputes the provision of the Stock Purchase Agreement pursuant to which Solair's rights to indemnification arise. Banner maintains that Debtor Solair's indemnification rights arise under 9.1 of the Stock Purchase Agreement and are therefore subject to a $2 million threshold, which threshold is not exceeded by the Castle judgment. (Objection of Banner at 17:25, 18:26) Finally, Banner asserts that nothing in the Bankruptcy Code authorizes Debtor Solair to ignore Banner's contractual rights to object to the purported assignment. (Objection of Banner at 13:19)

### Castle Precision Industries, Inc.

Castle's Motion, filed in December of 2004, requested that the Court grant relief from the automatic stay to the extent such stay might otherwise prevent Castle from prosecuting its appeal of the Final Judgment entered in the Florida Action. Castle alleged that cause exists for relief under 362 (d) (1) "because the Debtors have no interest in the litigation between Castle and Solair as provided in the Stock Purchase Agreement." (Motion of Castle at 7:21)

Castle asserts that its intent in seeking relief from stay is to proceed with an appeal from and execution upon the judgment it obtained against Solair in the Florida Action. (Motion of Castle at 9:27). Castle has represented that the Debtors have no interest in the Florida Action and that Castle is not attempting to gain any unfair advantage over the Debtors' other creditors through proceeding in another court. (Motion of Castle at 7:21, 9:26-27). Castle argues that the Court should grant it relief from the automatic stay because it can establish sufficient cause, as required by 362 (d)(1), and can show that the balance of hardship favors Castle. (Motion of Castle at 8:24 et seq.)

Castle asserts the validity of the Stipulation between Castle, the KI-1 Liquidating Trust and the Class 1 Liquidating Trust, which contains an assignment of certain indemnification rights of Solair, notwithstanding any express prohibitions in the Stock Purchase Agreement against assignment. (Castle Objection at 3:9 and 5:14). Castle implies that after it had filed its Motion for relief from the automatic stay, Castle was contacted by the Liquidating Trust and the Class 1 Trust to negotiate a consensual resolution of the Motion, and the negotiated Stipulation resulted. (Castle Objection 3:9). Castle asserts that Banner's allegation that Florida law prohibits the assignment of the indemnification provisions is not supported, and further alleges that the Bankruptcy Code specifically permits assignments of executory contracts. (Castle Objection at 5:13 et seq.) By its terms the Stipulation purports to assign to Castle certain rights of Solair (notably to indemnification by Banner) in respect of the judgment obtained by Castle in the Florida Action, and to waive certain rights of the Liquidating and Class 1 Liquidating Trustees.

Castle alleges, despite evidence to the contrary, that it was unaware that Kellstrom and certain of its affiliates had filed bankruptcy proceedings in this Court. (Motion of Castle at 6:16, Castle Objection at 2:3).

Castle asserts that Solair may have failed to file a Suggestion in Bankruptcy until post-judgment in the Florida Action, actually having the intention of misleading the Florida Court. (Castle Response at 4:9). Castle argues that Banner is the real party in interest in the Florida Action (Castle Response at 5:10); that Banner may be guilty of bad faith for its having remained silent so long as its sole right to benefit from any judgment Solair obtained against Castle was still alive, but, because as soon as that right became valueless, a Suggestion in Bankruptcy was filed. (Castle Response at 4:9).

Castle asserts that the Debtors' indemnification rights pursuant to the Stock Purchase Agreement could have been classified under the Plan as an unimpaired indemnity claim, but that rather than pursuing Banner itself, the Liquidating Trustee has agreed to assign that right to Castle. (Castle Response at 5:11). Castle argues that an assignment to Castle of the Banner indemnification obligation is a mere substitution of the party to be paid and therefore cannot harm Banner in any way. (Castle Objection at 3:9; Castle Response at 5:11).

Castle argues that because the Plan has been substantially consummated and the Liquidating Trustee has made most of the distributions in accordance with the Plan, the Court's refusal to authorize the assignment could have serious potential consequences for the Debtors' estates and the creditors. (Castle Response at 7:14). Castle asserts that these could manifest themselves in two ways. Castle suggests that under the first scenario the Debtors could seek to modify the Plan to add a separate class for Castle's "litigation" claim, which claim is unimpaired since Banner is obligated fully to indemnify Solair, and the estates could then seek indemnification from Banner. Castle suggests that under the second the Court could require that the Plan be unwound and a reserve established for Castle's claim in an amount Castle believes it will ultimately be awarded if its appeal is successful. Castle argues that in the latter case, the estates would have to seek the return of disbursements already made under the Plan, leading to greater administrative expenses and litigation costs. Castle argues that the only party that would benefit in either case is Banner, who, Castle further alleges, has engaged in duplicitous conduct that has caused the problem now before the Court. (Castle Response at 7:15). Castle further argues that to the extent Banner's position is premised upon the executory nature of the Stock Purchase Agreement, the Liquidating Trust is authorized to assign the indemnification provision to Castle, notwithstanding the anti-assignment


provisions. (Castle Objection at 5:14-15, 6:16; Castle Response at 9:19). The argument goes as follows: because the prohibition against assignment of certain types of contracts contained in 365 (c) does not apply, therefore, in accordance with 356 (f)(1) of the Code, the indemnification is assignable even without Banner's consent. (Castle Objection at 5:14 et seq.; Castle Response at 9:18{sic}, 10:19{sic}). Castle argues that the Indemnity Right is a chose in action and not governed by the anti-assignment clause in the Stock Purchase Agreement. (6/23/05 Hearing).

Castle finally argues that the Stipulation only authorizes Castle to enforce "Solair's rights if any," under the Stock Purchase Agreement, and as the Liquidating Trustee has made no representations as to the validity of those rights, and they can be litigated if the need arises, no harm has been caused to Banner. (Castle Objection at 7:18, emphasis in original)).

Castle requests that the Court overrule Banner's objection and allow the Stipulation as entered (in the now-vacated Order and Stipulation) to remain unaltered, or in the alternative that the Debtors be authorized to amend the Plan to establish a class for the Castle litigation claim (Castle Response at 11).

Counsel for Castle argued at the Hearing of June 23, 2005 that the assignment is absolutely estate neutral and will impose no additional burdens on the estate (6/23/05 Hearing at 1:39:18) and that the Stipulation was obtained to take the Debtor out of the middle (6/23/05 Hearing at 1:40:54). Counsel argued that the Assignment only changes the party to whom Banner is obligated to pay the Florida judgment, namely Castle. (6/23/05 Hearing at 1:40:02). Counsel observes that the Stipulation will give Castle the right to demand indemnification by Banner, without the necessity of returning to Court. Castle argues that Solair pushed Castle into its current position without giving them notice of the Plan, depriving them of the opportunity to be heard. (6/23/05 Hearing).

**The Trustee of the K1 Liquidating Trust**

The Liquidating Trustee ("the Trustee") objects to the lifting of the stay and asks that the Stipulation be rescinded and rejected by the Court. (Statement at 5). The Trustee alleges that in moving the Court for relief from the automatic stay, Castle did not reveal all [necessary] facts. (Statement at 2). The Trustee asserts that he was not a party to the Florida litigation and believes that because Banner paid for and directed the defense of the Solair Debtor, the litigation was not listed on the Kellstrom Debtors' schedules. (Statement at 3:3). The Trustee opposes the relief from stay requested by Castle, arguing that Castle has attempted to use the estates and the Debtors to bolster claims and a right of recovery against Banner for the full amount of its judgment in the Florida Action and for attorneys fees. (Statement at 2).

The Trustee observes that Castle did not reveal in its motion for relief from the stay that it sought an assignment of rights under the Stock Purchase Agreement, and asserts that Castle glossed over the facts in both its motion and discussions with the Trustee. (Statement at 2:footnote 1). The Trustee implies that Castle made the first approach with a proposal for a Stipulation to resolve Castle's Motion (Statement at 3:3), though Castle implied that the approach came from the Trustee. (Castle Objection at 3:9). The Trustee alleges that the Stipulation went too far in accommodating Castle and the request has turned out to be a significant burden and drain of Trust resources. (Statement at 3:3).

The Trustee asserts that because Castle, having had notice of the filing of the Debtors' bankruptcy cases, did not properly assert a claim against the estates, nor file a timely proof of claim for any judgment arising from the litigation, Castle has no claim and there is no need too reserve for its claim or unwind the plan to reserve for a claim if the Stipulation is rescinded, as Castle asserts.

11

(Statement at 3:2). The Trustee disputes any claim that the Stock Purchase Agreement was executory to any extent. The Trustee asserts that at the time the bankruptcy cases were filed the Kellstrom Debtors had no [further] obligations whatsoever to perform under the Agreement, and further, that the Trustee did not in any event attempt to assume and assign the rights under the Agreement. (Statement at 4:5).

At the Hearing, Counsel for the KI-1 Liquidating Trustee ("Counsel for the Trustee") stated that the Assignment contained in the Stipulation [conferred] a greater right on Castle in the dispute with Banner than the Trustee initially understood to be the case, and for that [Assignment] the estate or the Trust was really getting nothing. (6/23/05 Hearing at 1:36:01). Counsel for the Trustee stated that the Trustee understood the Assignment to be estate neutral and still believes that it is estate neutral, being a dispute between Castle and Banner. (6/23/05. Hearing at 1:35:32-1:36:24). Counsel asserts that she was not told that Banner wasn't getting notice. (6/23/05 Hearing at 1:36:24).

Counsel for the Trustee stated that the estate did not have any interest in the Florida litigation, that there is no claim by Castle against the estate under the Stock Purchase Agreement, and that the Trustee did not believe the estate had any particular rights under the Stock Purchase Agreement, if in fact there are any rights "still alive" after confirmation of the Plan. (6/23/05 Hearing at 1:36:30-40).

Counsel further stated that most of the assets went to Bank of America [into the Class 1 Liquidating Trust) and the [Liquidating] Trust did not inherit the asset purchase agreement, therefore it was not an enumerated asset of the estate. (6/23/05 Hearing at 2:00:12).

In response to a direct question by the Court, Counsel for the Liquidating Trustee stated that the Trustee believed that he entered into the Stipulation in error, and that the Trustee does not "stand by it."

### Bank of America, N.A.

Bank of America, N.A. as Agent for the Debtors' Senior Secured Lenders objects to any relief that would have the effect of granting to Castle greater rights than those afforded to other pre-petition general unsecured creditors of the Debtors. (Objection at 6). While Bank of America takes no position as to the merits of the various disputes between Banner and Castle, Bank of America objects to the modification to the Stipulation proposed by Banner, because it would potentially expand the negotiated rights afforded to Castle by the Stipulation. (Ibid.).

Bank of America objects to any attempts by Castle to execute any judgment in the Florida Action upon assets of the former Debtors' estates or either of the Liquidating Trusts. (Objection at 8).

At the Hearing, Counsel for Bank of America objected to the lift of stay without the Stipulation which counsel represented had been bargained for negotiated and upon by it.

### VI. ANALYSIS/ FINDINGS OF FACT AND CONCLUSIONS OF LAWS[2]

The issues before the Court are two: whether the automatic stay imposed by 362 of the Code should be lifted, and if so, whether the Court should incorporate into an Order the terms of the Stipulation entered into between and among Castle and the K1-1 Liquidating Trust and the Class 1 Liquidating Trust.

---

[2] Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Code ("the Code"), 11 U.S.C. § *101 et seq.*

13

The merits of the grounds upon which Castle was seeking relief from the automatic stay and the objections to such relief which might have been raised earlier were never fully developed, the matter having been resolved by Stipulation. Banner is not opposed to the lift of stay but objects to the Court's entry of the Stipulation, which it claims materially and adversely effect its rights. The Liquidating Trustee disavows the Stipulation. Bank of America stands by it, having bargained for the Stipulation in agreeing to the lift of stay.

Notwithstanding that 105 (a) of the Code is the basis for a broad exercise of power in the administration of a bankruptcy case, the Court has no authority to alter property rights or other rights or duties under applicable non-bankruptcy law, nor create substantive rights that are otherwise unavailable under applicable law, except where such alteration is authorized by the Bankruptcy Code. See, e.g., In re Adelphia Communications, Corp., No. 04-2817 (GEL) (S.D.N.Y. September 27, 2004) 2004 WL 2186582, at 10-11, In re Dairy Mark Convenience Stores, Inc., 351, F.3d 86, 92 (2d Cir. 2003).

The Court has already vacated the Order and Stipulation. It will not re-incorporate the Stipulation into an order for relief from stay, for by doing so the Court would be ratifying and approving its terms, possibly prejudicing Banner by limiting its ability to dispute its liabilities, and thereby impermissibly favoring Castle.

Nor will the Court re-write the Stipulation over the objection of any party to it, nor relieve the parties thereto from any effect it may have independent of any order of this Court.

Given the basis of the Court's decision, the Court makes no findings as to the substantive merits of any claims and defenses of Castle and Banner, whether arising out of the Florida Action or the Stock Purchase Agreement, or the Stipulation, or indeed whether or not the Stipulation and

its purported Assignment term has validity apart from the now vacated Order and Stipulation. For the reasons set forth above, Castle's Motion for Relief from Stay is **DENIED**. The parties shall submit an appropriate order.

Dated: Sept 28, 2006

                                           Honorable Walter Shapero
                                           United States Bankruptcy Judge